ROSS, Circuit Judge,
dissenting.
I respectfully dissent from the majority opinion. Instead, I would affirm the judgment of the district court concluding that the civil action should not be dismissed, but stayed during the President’s term in office. Further, I would reverse the district court’s conclusion allowing discovery to proceed.
In my opinion, the language, logic and intent of Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), although set in the context of official acts, applies with equal force to the present factual scenario and directs a conclusion here that, unless exigent circumstances can be shown, private actions for damages against a sitting President of the United States, even though based on unofficial acts, must be stayed until the completion of the President’s term.
The Fitzgerald decision was derived from both the functional necessities of the President’s execution of Article II duties, and the principle that no branch should be subject to crippling incursions by another branch. The Court’s reasoning is highly instructive in the present case because it demonstrates the importance of insulating the President from the disruptive effects of private suits against him, whether based on official or unofficial acts. The Fitzgerald Court placed primary reliance on the prospect that the President’s discharge of his constitutional powers and duties would be impaired if he were subject to suits for damages. The Court stated, “[bjeeause of the singular importance of the President’s duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government.” Id. at 751, 102 S.Ct. at 2702.
This “diversion of energies” argument refers not only to the concern with whether the President will execute his official duties in a fearless and impartial manner, but also recognizes that the “President occupies a unique position in the constitutional scheme,” one that “distinguishes him from other executive officials.” Id. at 749, 750, 102 S.Ct. at 2701. Article II, § 1 of the Constitution uniquely vests the entire executive power in the President. No other branch of government is entrusted to a single person. It is this singularity of the President’s constitutional position that calls for protection from civil litigation.
The unofficial nature of the alleged events would not make defending a private suit for civil damages any less of a burden on the President’s time and attention and therefore on his constitutional responsibilities, or any less of a “risk[] to the effective functioning of government.” Id. at 751, 102 S.Ct. at 2702. When the President is called upon to defend himself during his term of office, even in actions wholly unrelated to his official responsibilities, the dangers of intrusion on the authority and functions of the Executive Branch are both real and obvious. The burdens and demands of civil litigation can be expected to impinge on the President’s discharge of his constitutional office by forcing him to divert his energy and attention from the rigorous demands of his office to the task of protecting himself against personal liability. That result would disserve the substantial public interest in the President’s unhindered execution of his duties and would impair the integrity of the role as *1368 signed to the President by Article II of the Constitution.
Further, the Fitzgerald majority was concerned with the possibility that the “sheer prominence of the President’s office” makes a President “an easily identifiable target for suits for civil damages.” Id. at 752-53, 102 S.Ct. at 2703. In his concurrence, Chief Justice Burger noted the possibility that private suits for damages against a President could be used for purposes of harassment and extortion. Id. at 762, 763, 102 S.Ct. at 2707, 2708 (Burger, C.J., concurring). While stated in the context of official acts, Chief Justice Burger’s concurrence applies with equal force to the present case:
The need to defend damages suits would have the serious effect of diverting the attention of a President from his executive duties since defending a lawsuit today— even a lawsuit ultimately found to be frivolous — often requires significant expenditures of time and money, as many former public officials have learned to their sorrow. ... When litigation processes are not tightly controlled ... they can be and are used as mechanisms of extortion. Ultimate vindication on the merits does not repair the damage.
Id. at 763, 102 S.Ct. at 2708 (Burger, C.J., concurring).
The same concerns are implicated in the present action as well, where such suits could be pursued merely for the purpose of gaming partisan political disruption, public notoriety, unwarranted financial gain, or potential extortion. Indeed, any number of potential private claims could be contrived to entangle a sitting President in embarrassing or protracted litigation, alleging unwitnessed one-on-one encounters that are extremely difficult to dispose of by way of a pretrial motion.
The Fitzgerald Court also recognized that presidential immunity is “rooted in the separation of powers under the Constitution.” Id. at 753, 102 S.Ct. at 2703 (quoting United States v. Nixon, 418 U.S. 683, 708, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974)). The Court noted that the Framers of the Constitution assumed that “the President personally, was not the subject to any process what-ever_ For [that] would ... put it in the power of a common justice to exercise any authority over him and stop the whole machine of Government.” Id. 457 U.S. at 750 n. 31, 102 S.Ct. at 2701 (quoting Journal of William Maclay 167 (E. Maclay ed. 1890) (alteration in original)). Quoting Thomas Jefferson, the Supreme Court further underscored its concern that exercising jurisdiction over a President would create the opportunity for unconstitutional judicial intrusion upon Executive authority:
[W]ould the executive be independent of the judiciary, if he were subject to the commands of the latter, & to imprisonment for disobedience; if the several courts could bandy him from pillar to post, keep him constantly trudging from north to south & east to west, and withdraw him entirely from his constitutional duties?
Id. (quoting 10 The Works of Thomas Jefferson 404 (P. Ford ed. 1905)).
In my view, the separation of powers doctrine requires that private civil actions against a sitting President for unofficial acts must be stayed during the President’s term in office. Civil lawsuits against a President create opportunities for the judiciary to intrude upon the Executive’s authority, set the stage for potential constitutional confrontations between courts and a President, and permit the civil justice system to be used for partisan political purposes. It cannot be denied that the potential for such conflicts is inherent in subjecting any President personally to a court’s jurisdiction.
The majority concludes the remedy for interference with the performance of the President’s official duties by the demands of discovery and trial preparations and proceedings is the filing of motions with the court for rescheduling, additional time or continuances. Ante at 1362. If this route proves to be unsuccessful, the majority suggests the President should be required to petition this Court for a writ of mandamus or prohibition, id., and arguably then to appeal any adverse decision to the Supreme Court. This suggestion, however, clearly epitomizes the separation of powers conflict inherent in a system that subjects a sitting President personally to *1369 the court’s jurisdiction for the purpose of private civil litigation.
The majority’s decision leaves as many questions unanswered as it answers: Must a President seek judicial approval each time a scheduled deposition or trial date interferes with the performance of his constitutional duties? Is it appropriate for a court to decide, upon the President’s motion, whether the nation’s interest in the unfettered performance of a presidential duty is sufficiently weighty to delay trial proceedings? Once a conflict arises between the court and the President as to the gravity of an intrusion on presidential duties, does a court have the authority to ignore the President’s request to delay proceedings? Finally, can a court dictate a President’s activities as they relate to national and international interests of the United States without creating a separation of powers conflict? While the majority would encourage other courts to exercise “judicial case management sensitive to the burdens of the presidency,” ante at 1361, only a stay of civil litigation during a President’s term in office will ensure the performance of Executive duties unencumbered by the judiciary and thereby avoid separation of powers conflicts.
While noting that the separation of powers doctrine “does not bar every exercise of jurisdiction over the President of the United States,” Fitzgerald, 457 U.S. at 753-54, 102 S.Ct. at 2703, in view of the significant encroachment upon presidential duties and independence that would necessarily accompany litigation, the Fitzgerald Court admonished that, before asserting such jurisdiction, a court “must balance the constitutional weight of the interest to be served [by the litigation] against the dangers of intrusion oh the authority and functions of the Executive Branch.” Id. at 754, 102 S.Ct. at 2703 (emphasis added) (citing Nixon v. GSA 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977); United States v. Nixon, 418 U.S. at 703-13, 94 S.Ct. at 3105-10).
Where there is no urgency to pursue a suit for civil damages, the proper course is to avoid opportunities for breaching separation of powers altogether by holding the litigation in abeyance until a President leaves office. The cause of action should be stayed unless the plaintiff can show that he or she will suffer irreparable injury without immediate relief and that the immediate adjudication of the suit will not significantly impair the President’s ability to attend to the duties of his office.
It is important to keep in mind that the issue here is not whether the President may be required to answer claims based on unofficial conduct, but when. This conclusion merely delays, rather than defeats, the vindication of the plaintiffs private legal interests, and thus is far less burdensome for a plaintiff than the absolute immunity recognized in Fitzgerald. A stay for the duration of the President’s service in office would not prevent Jones from ultimately obtaining an adjudication of her claims. Rather, staying the litigation will protect the important public and constitutional interests in the President’s unimpaired performance of his duties, while preserving a plaintiffs ability to obtain resolution of his or her claims on the merits. Postponing adjudication of private damage actions will rarely defeat a plaintiffs ability to ultimately obtain meaningful relief. “[W]e do well to bear in mind that the focus must not be simply on the matter of judging individual conduct in a fact-bound setting; rather, in those familiar terms of John Marshall, it is a Constitution we are expounding. Constitutional adjudication often bears unpalatable fruit. But the needs of a system of government sometimes must outweigh the right of individuals to collect damages.” Id. at 758-59, 102 S.Ct. at 2706 (Burger, C.J., concurring).
The well-known travail of litigation and its effect on the ability of the President to perform his duties, as well as the subjection of the President to the ongoing jurisdiction of the courts and the attendant impact on the separation of powers, dictate the postponement of non-exigent, private civil damages litigation until the President leaves office.
In my opinion, the stay should include pretrial discovery, as well as the trial proceedings, because discovery is likely to pose even more intrusive and burdensome demands on the President’s time and attention *1370 than the eventual trial itself. Similarly, I would grant a stay of proceedings against a co-defendant of a sitting President where, given all the circumstances, the claims against the co-defendant cannot proceed without materially diminishing the effectiveness of a stay of proceedings against the President. I agree with the district court’s conclusion here that a stay of the claims against Trooper Ferguson is essential if the President is to be fully protected.
Out of respect for the separation of powers and the unique constitutional position of the President, I conclude the President ordinarily should not be required to defend himself against civil actions until after the completion of his service in office. Therefore I would hold that to rebut the presumption that private suits against a sitting President should not go forward during the President’s service in office, the plaintiff should have to demonstrate convincingly both that delay will seriously prejudice the plaintiffs interests and that immediate adjudication of the suit will not significantly impair the President’s ability to attend to the duties of his office. Absent such a showing, the litigation should be deferred.